UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLAGSTAR BANK, FSB,

    Plaintiff,

vs.

CENTERPOINTE FINANCIAL, INC.;
CRAIG PERRY; STEPHEN MARGOLIS;
AND LEOPOLD, KORN, LEOPOLD,
AND SNYDER, P.A.,

    Defendants.
_____/

Case Number: 2:10-cv-14234

Paul D. Borman
United States District Court

## ORDER GRANTING DEFENDANT LEOPOLD, KORN, LEOPOLD & SNYDER P.A.'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Leopold, Korn, Leopold & Snyder, P.A.'s ("Leopold" or "Defendant") motion to dismiss for lack of personal jurisdiction. (Dkt. No. 3.) Plaintiff Flagstar Bank, FSB ("Flagstar" or "Plaintiff") has filed a response (Dkt. No. 9), and Defendant has filed a reply. (Dkt. No. 10.) Oral arguments were heard on May 11, 2011. For the following reasons, the Court GRANTS Defendant's motion.

**I.**     **Background**

This action arises out of Plaintiff's relationship with co-defendant Centerpointe Financial Inc. ("Centerpointe"), a mortgage broker that is incorporated in Florida and has its principal place of business there. Plaintiff, which is a federally chartered bank with its principal place of business in Troy, Michigan, contracted with Centerpointe to fund 38 mortgage loans (the "Subject Loans"). (Pl.'s Br. in Opp. to Def.'s Mot. 1.) Co-defendant Craig Perry ("Perry") was Centerpointe's

1

president at the time, and signed the contract on behalf of the company. The contract also named co-defendant Stephen Margolis ("Margolis") as the company's vice-president.[1] The contract between Flagstar and Centerpointe provides for jurisdiction in the State of Michigan and contains a Michigan choice-of-law provision. (Pl.'s Br. Ex. A.)

Before closing the deal, Plaintiff required certain information about the borrowers receiving the mortgage loans it was funding. Plaintiff claims "[t]he borrowers lied about their income, assets and/or liabilities, and they lied about their intent to occupy the properties as their primary residence." (*Id.* at 1.) Plaintiff alleges that Perry and Margolis facilitated and/or encouraged this fraud, through Centerpointe, in order to help purchasers of homes built by Centerline Homes, Inc. ("Centerline"), another company allegedly controlled by Perry and Margolis. (*Id.* at 1-2.)

Leopold allegedly acted as Plaintiff's closing and escrow agent during this process. (*Id.* at 2.) Plaintiff claims that as a result of this relationship, Leopold had a fiduciary responsibility toward Flagstar. (*Id.*) Plaintiff further alleges that while acting as its agent, Leopold was also simultaneously acting as the registered agent for Centerpointe and Centerline. (*Id.* at 1.) In its Complaint, Plaintiff contends that Leopold breached its fiduciary duty and is guilty of negligence for failing to ensure all the conditions required by the contract were met and all the information provided by the borrowers was correct before a transaction was closed. (Compl. ¶ 71.) In its response, Plaintiff also alleges that Leopold breached its duty of loyalty by serving as Plaintiff's closing agent while also acting as the registered agent for Centerpointe. (Pl.'s Resp. 7.) Specifically, Plaintiff claims that Leopold negligently performed title searches that would confirm that the

---

[1] Margolis and Perry have filed their own motions to dismiss based on lack of personal jurisdiction as well (Dkt. Nos. 4 & 5 respectively), which are taken up in another Order.

2

borrowers did not have any previous mortgages. (*Id.* at 2-5.)

After Plaintiff filed suit in Michigan state court, Leopold (along with its other co-defendants) removed the action to this Court. Leopold now asks the Court to dismiss Plaintiff's claims against the firm because it argues this Court does not have personal jurisdiction over it. For the following reasons the Court GRANTS Defendant's motion.

**II.     Standard of Review**

A district court has three options when faced with a motion to dismiss for lack of personal jurisdiction. The court may: (1) decide the motion on affidavits alone; (2) permit discovery to help rule on the motion; or (3) conduct an evidentiary hearing to decide any remaining factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Although the plaintiff always bears the burden of establishing that jurisdiction exists, the method selected by the court to resolve the issue will affect the weight of the burden. *Id.*; *Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 770 (E.D. Mich. 2001).

When the court relies solely on affidavits, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists to defeat a motion to dismiss. *Theunissen*, 935 F.2d at 1458. In such a scenario, the pleadings and affidavits are read in the light most favorable to the plaintiff. *Id.* at 1459. Additionally, the court should not give any weight to the contrary assertions of the non-moving party. *Id.* This prevents out-of-state defendants from denying personal jurisdiction simply by filing affidavits contradicting pertinent jurisdictional facts. *Id.* The defendant's affidavits, however, are not to be completely ignored. They can present factual disputes that merit further investigation before ultimately deciding whether jurisdiction exists. *See, e.g., id.* at 1465 (remanding

for an evidentiary hearing because of the "directly contradictory nature of the parties' assertions"). If an evidentiary hearing is held, the plaintiff must demonstrate that jurisdiction is proper by a preponderance of the evidence. *Id.*; *Great Domains*, 141 F. Supp 2d at 771.

### III. Discussion

In the present case, no federal statue directly authorizes jurisdiction over Defendant. Accordingly, this Court must determine whether personal jurisdiction would be proper in the State of Michigan. *See* Fed. R. Civ. P. 4(k)(1). Jurisdiction over a non-resident defendant is permitted in Michigan if suit can be brought against the defendant under Michigan's long-arm statute without violating the due process requirements of the Constitution. *Great Domains*, 141 F. Supp. 2d at 771 (quoting *Reyonlds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994)) The Michigan Supreme Court has interpreted Michigan's long-arm statute as providing for the broadest grant of jurisdiction consistent with due process. *Sports Auth. Mich., Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000) (citing *Sifers v. Horen*, 385 Mich. 195, 198-99 (1971)). As a result, the analysis collapses into deciding whether exercising personal jurisdiction over Defendants would violate Due Process. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 89 F.3d 1257, 1262 (6th Cir. 1992).

It is well-established that in order for a court to exert limited personal jurisdiction, the defendant must have "sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The Sixth Circuit has repeatedly analyzed three criteria to decide whether a court's exercise of personal jurisdiction over an out-of-state defendant is constitutional:

4

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (citing *S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968)).

### A.     Purposeful Availment

The first *Mohasco* requirement is that an out-of-state defendant purposefully avail himself of the privilege of acting or producing consequences in the forum state. *CompuServe*, 89 F.3d at 1263. This prong is satisfied if the defendant commits acts that "create a 'substantial connection' with the forum state," so that he "should reasonably anticipate being haled into court there." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)); *see also World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 295 (1980). The purpose of this requirement is to avoid subjecting defendants to suits in foreign forums based on contacts that are "random," "fortuitous," or "attenuated." *Burger King*, 471 U.S. at 475. The defendant, however, does not need to be physically present in the forum state to meet this test. *Great Domains*, 141 F. Supp. 2d at 772.

Defendant argues that the following facts demonstrate that it has not purposefully availed itself of acting, or causing a consequence to occur, in Michigan: (1) it is a Florida corporation with its principal place of business in Aventura, Florida; (2) it has no offices in Michigan; (3) it owns no real or personal property in Michigan; (4) it is not authorized to conduct business in Michigan; (5) it has no employees in Michigan and does not recruit attorneys from Michigan; (6) it does not transact business or provide any services in Michigan; (7) it has not entered into any contracts for

services to be performed or materials to be furnished in the state; (8) it does not have an agent for process in Michigan; (9) it has never solicited any business in Michigan; (10) none of its shareholders are residents of the State of Michigan; (11) it has not insured any person, property, or risk located in Michigan; and (12) "the transactions alleged as the basis for Plaintiff's complaint . . . all occurred in the State of Florida, and all services were provided by the Leopold Firm in the State of Florida." (Def.'s Br. 1-2.)

Plaintiff, on the other hand, contends that Leopold was acting as its fiduciary agent in its role as escrow agent and closing agent. (Pl.'s Resp. 7.) As such, it had a fiduciary duty to verify the borrowers made their down payment deposits in escrow as well as search for and disclose prior mortgage loans the borrowers had already taken out. Plaintiff claims that Leopold not only failed to satisfy those duties, but also breached its fiduciary duty of undivided loyalty by serving as Defendant Centerpointe's registered agent at the same time it was acting as the closing/escrow agent for Flagstar with respect to 27 mortgage loan transactions. (*Id.* at 7-8.) Plaintiff claims that Defendant has purposefully availed itself of acting or causing consequences to occur in Michigan because "[t]here is nothing accidental about acting as the escrow agent and closing agent with a Michigan bank and expecting that, after violating its fiduciary duty of undivided loyalty, that the Michigan bank would seek to sue it in Michigan." (*Id.* at 7.) Furthermore, Plaintiff argues that Leopold closed 27 transactions and even a *single* contact or transaction can confer jurisdiction without violating Defendant's due process rights. (*Id.* at 8.)

The Court holds that Plaintiff has failed to demonstrate that Leopold purposefully availed itself of acting or causing a consequence in the State of Michigan. Plaintiff makes much of Leopold's alleged breach of fiduciary duties. (*Id.* at 10.) Even assuming Defendant was acting as

Plaintiff's fiduciary and violated its duties pursuant to that relationship, those facts alone are not sufficient to establish a *prima facie* case for personal jurisdiction. The situation Plaintiff describes is very similar to those cases involving plaintiffs who sue attorneys and law firms that represented them in out-of-state proceedings for malpractice. In those cases, courts in the plaintiff's home state routinely hold that they do not have personal jurisdiction over defendant law firms simply because the non-resident attorneys purportedly breached their fiduciary duties to the plaintiff or committed malpractice. *See, e.g., Satwelle v. Farrell*, 70 F.3d 1381, 1392 (1st Cir. 1995) ("The mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required."); *King v. Ridenour*, 749 F. Supp. 2d 648, 656-57 (E.D. Mich. 2010); *see also Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230 (5th Cir. 1995) ("The bare existence of an attorney-client relationship is not sufficient.").

In *King*, the court held that it could not constitutionally exercise personal jurisdiction over a Dallas-based law firm that had represented the plaintiffs, who were Michigan residents, because the plaintiffs had not alleged facts demonstrating the defendant firm had purposefully availed itself of the benefits and protections of the state. *Id.* The court found that "[t]here is no dispute that Waters has no officers, partners, employees, or property in Michigan. It does not advertise in Michigan." *Id.* at 656. The court also found it significant that the Dallas firm never actively sought out the plaintiffs as clients. *Id.* at 657.

The *King* court also relied on the First Circuit's decision in *Satwelle* and the Eight Circuit's ruling in *Austad Company v. Pennie & Edmounds*, 823 F.2d 223 (8th Cir. 1987). *See* 749 F.2d at 655-56. In *Satwelle*, the plaintiffs were a New Hampshire family who filed a malpractice claim

7

against the law firms that represented them in a wrongful death action in Florida. 70 F.3d at 1386. The plaintiffs originally hired a firm in California, who referred the case to its office in Washington D.C. The D.C. office, in turn, hired local counsel in Florida to file the case. *Id.* The plaintiffs sued when they found out that the same defendant had settled a very similar lawsuit for substantially more money than the plaintiffs received in their settlement. *Id.* at 1386-87. The district court in New Hampshire granted the defendant law firms' motion to dismiss for lack of personal jurisdiction because it concluded the firms had not purposefully availed themselves of acting in New Hampshire. *Id.* at 1391. Even though the court acknowledged that the defendants knew they were representing New Hampshire residents, the court found that the defendants' only contacts – communications with the plaintiffs in connection with their wrongful death suit – were insufficient to defeat a motion to dismiss. *Id.* The court also dismissed the plaintiffs' argument that the defendants satisfied the purposeful availment prong by conferring with New Hampshire attorneys to distribute the settlement proceeds to the plaintiffs' minor son. *Id.* at 1393.

The Eighth Circuit came to a similar conclusion in *Austad*. In that case, a South Dakota business, in connection with several other business, hired a New York law firm to represent it in a patent dispute. 823 F.2d at 224. Although the firm made several phone calls to the client in South Dakota, mailed bills there, accepted payment from there, and even sent an associate to South Dakota for three days to review documents and gather information in order to respond to discovery requests, the Eighth Circuit affirmed the district court's dismissal of the plaintiff's malpractice and *breach of fiduciary duty* claims for lack of personal jurisdiction. *Id.* at 224-25.

The court took for granted that an attorney-client relationship existed between the plaintiff and defendant firm but stated "we do not believe that Pennie & Edmounds had sufficient contacts

with South Dakota to confer personal jurisdiction." *Id.* at 226. The court noted that the firm did not have an office in South Dakota, none of its attorneys lived there or were licensed to practice law there, it never advertised or solicited business in South Dakota, and "the actions giving rise to [the] lawsuit took place in Maryland, not in South Dakota." *Id.* The court also emphasized that the defendant did not "actively seeks out" the plaintiff as a client. *Id.* The plaintiff was one of many companies who had been threatened with litigation for violating the same patent and had banded together to fund a common defense. Ultimately, the defendant law firm had been selected by one of the other corporations that was a long-standing client of the New York-based law firm. *Id.*

In the case at bar, Flagstar's only allegation that might show a connection between Leopold and the State of Michigan aside from its alleged fiduciary relationship with Plaintiff is that it negligently closed 27 mortgage loan transactions.[2] (Pl.'s Resp. 8.) Plaintiff then cites several cases where courts have upheld that even a single contract between an out-of-state defendant and a resident plaintiff can establish jurisdiction. (*Id.*) The cases, Plaintiff cites, however, are distinguishable because they involve contracts between the non-resident defendant and the plaintiff. Here, there is no dispute that the transactions at issue were not between Leopold and Flagstar. Instead, like the attorneys described above, Leopold was merely acting as Plaintiff's agent or fiduciary. But a fiduciary relationship alone, even if breached, is not enough to establish personal jurisdiction over an out-of-state fiduciary. *See Sawtelle*, 70 F.3d at 1392.

There are cases where statements or documents containing intentional misrepresentations or fraud directed to the plaintiff have justified the exercise of personal jurisdiction in the plaintiff's

---

[2] At oral argument, Defense counsel claimed that, in fact, only two of the transactions at issue were closed by Defendant Leopold. Regardless of the actual number, the Court's analysis remains the same.

home state, but in those instances the plaintiff alleged intentional fraud. *See, e.g.*, *Tocco v. Greer*, No. 11-10310, 2011 WL 1298760, at *1 (E.D. Mich. Mar. 31, 2011); *Wallace v. Frank*, 662 F. Supp. 876, 879 (E.D. Mich. 1987). In fact, the *Wallace* court explicitly distinguished between claims alleging negligence and those alleging intentional fraud. *See* 662 F. Supp. at 879 ("If plaintiffs were simply alleging negligence against Raddiss & Rosenfelt, *Woodward* might have been dispositive. However, here plaintiffs charge fraudulent conduct[.]"). In the instant case, Defendant Leopold is the only defendant not accused of fraud. (Count VI.)

Because Plaintiff only relies on Leopold's alleged breach of their fiduciary relationship, it has not made out a *prima facie* case that this Court may constitutionally exercise personal jurisdiction over Defendant. While there may have been some phone calls placed to Michigan or documents or bills sent, these are no more conclusive than communications other courts have held insufficient to confer jurisdiction as merely incidental to the relationship. *See Austad*, 70 F.3d at 1391. As a matter of law, Plaintiff has failed to present any evidence that Defendants have purposefully availed themselves of acting of causing consequences in Michigan. Accordingly, it is unnecessary to evaluate the remaining two factors under *Mohasco*.

IV.    Conclusion

For the aforementioned reasons Defendant's motion to dismiss is GRANTED.

**SO ORDERED.**

Dated: 5-26-11

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE