UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLAGSTAR BANK, FSB,

    Plaintiff,

vs.

CENTERPOINTE FINANCIAL, INC.;
CRAIG PERRY; STEPHEN MARGOLIS;
AND LEOPOLD, KORN, LEOPOLD,
AND SNYDER,

    Defendants.
_____/

Case Number: 2:10-cv-14234

Paul D. Borman
United States District Court

## ORDER GRANTING DEFENDANTS CRAIG PERRY AND STEPHEN MARGOLIS' MOTIONS TO DISMISS

This matter comes before the Court on Defendants Stephen Margolis ("Margolis") and Craig Perry's ("Perry," collectively "Defendants") motions to dismiss. (Dkt. Nos. 4 & 5 respectively.) Plaintiff Flagstar Bank, FSB ("Flagstar" or "Plaintiff") has filed one response to both motions (Dkt. No. 8), and Defendants have filed a joint reply. (Dkt. No. 11.) Oral arguments were heard on May 11, 2011. For the following reasons, the Court GRANTS Defendants' motions.

**I.  Background**

This action arises out of Plaintiff's relationship with co-defendant Centerpointe Financial Inc. ("Centerpointe"), a mortgage broker that is incorporated in Florida and has its principal place of business there. Plaintiff, which is a federally chartered bank with its principal place of business in Troy, Michigan, contracted with Centerpointe to fund 38 mortgage loans (the "Subject Loans"). (Pl.'s Br. in Opp. to Def.'s Mot. 1.) Perry signed the contract as Centerpointe's president. (*Id.*) The

1

contract also identified Margolis as Centerpointe's vice-president. (*Id.*) The contract between Flagstar and Centerpointe provides for jurisdiction in the State of Michigan and contains a Michigan choice-of-law provision. (Pl.'s Br. Ex. A.)

The Subject Loans were intended to provide funding for the sale of condominiums and townhomes in two construction projects that involved properties that were built by Centerline Homes at Georgetown, LLC, and Centerline Homes at Tuscany, LLC. Both companies are subsidiaries of Centerline Homes, Inc. (collectively "Centerline"), which is also controlled by Perry and Margolis. (*Id.* at 1-2.) Perry and Margolis allegedly established Centerpointe "to originate and process mortgage loans for the purchasers of Centerline Homes, Inc." (*Id.* at 2.)

Before closing the deal, Plaintiff required certain information about the borrowers receiving the mortgage loans it was funding. Plaintiff claims "[t]he borrowers lied about their income, assets and/or liabilities, and they lied about their intent to occupy the properties as their primary residence." (Dkt. No. 9 at 1.) Plaintiff alleges that Perry and Margolis facilitated and/or encouraged this fraud, through Centerpointe, in order to help purchasers of homes built by Centerline. (Pl.'s Br. at 1-2.) Plaintiff claims that "[t]he mortgage fraud was directed, Flagstar believes, by Defendants Perry and Margolis, and carried out by them and their agents, including their own companies and Leopold Korn." (*Id.* at 3.) Co-defendant Leopold, Korn, Leopold & Snyder, P.A. ("Leopold") acted as Plaintiff's closing and escrow agent during this process, performing the title searches and issuing the title insurance. (*Id.* at 2.) Allegedly, Leopold was also acting as Centerpointe and Centerline's registered agent. (*Id.*)

Plaintiff sued Centerpointe, Perry, Margolis, and Leopold under various theories of recovery in Michigan state court. The defendants then removed the action to this Court. Plaintiff has accused

the individual defendants of fraud, unjust enrichment, and civil conspiracy. Defendants Perry and Margolis now ask the Court to dismiss Plaintiff's claims against them, arguing that the Court lacks personal jurisdiction over them. For the following reasons, the Court agrees with Defendants. Accordingly, their motions are GRANTED.

## II.  Standard of Review

A district court has three options when faced with a motion to dismiss for lack of personal jurisdiction. The court may: (1) decide the motion on affidavits alone; (2) permit discovery to help rule on the motion; or (3) conduct an evidentiary hearing to decide any remaining factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Although the plaintiff always bears the burden of establishing that jurisdiction exists, the method selected by the court to resolve the issue will affect the weight of the burden. *Id.*; *Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 770 (E.D. Mich. 2001).

When the court relies solely on affidavits, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists to defeat a motion to dismiss. *Theunissen*, 935 F.2d at 1458. In such a scenario, the pleadings and affidavits are read in the light most favorable to the plaintiff. *Id.* at 1459. Additionally, the court should not give any weight to the contrary assertions of the non-moving party. *Id.* This prevents out-of-state defendants from denying personal jurisdiction simply by filing affidavits contradicting pertinent jurisdictional facts. *Id.* The defendant's affidavits, however, are not to be completely ignored. They can present factual disputes that merit further investigation before ultimately deciding whether jurisdiction exists. *See, e.g., id.* at 1465 (remanding for an evidentiary hearing because of the "directly contradictory nature of the parties' assertions").

If an evidentiary hearing is held, the plaintiff must demonstrate that jurisdiction is proper by a preponderance of the evidence. *Id.*; *Great Domains*, 141 F. Supp 2d at 771.

### III. Discussion

There are two ways this Court could have personal jurisdiction over Defendants. First, jurisdiction would lie if Plaintiff can allege facts demonstrating that jurisdiction was proper under a normal personal jurisdiction analysis – by showing that Defendants have sufficient minimum contacts with the State of Michigan. Second, because it is clear that Centerpointe consented to submit to personal jurisdiction in Michigan, the Court could have jurisdiction over the Defendants, former officers of Centerpointe, by "piercing the corporate veil." This would only be appropriate if Margolis and Perry used Centerline as their alter ego. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)). For the following reasons, the Court finds that neither rationale demonstrates this Court has personal jurisdiction over Defendants.

#### A.   Defendants' Contacts With Michigan

In the present case, no federal statute directly authorizes jurisdiction over Defendants. Accordingly, this Court must determine whether personal jurisdiction would be proper in the State of Michigan. *See* Fed. R. Civ. P. 4(k)(1). Jurisdiction over a non-resident defendant is permitted in Michigan if suit can be brought against the defendant under Michigan's long-arm statute without violating the due process requirements of the Constitution. *Great Domains*, 141 F. Supp. 2d at 771 (quoting *Reyonlds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994)) The Michigan Supreme Court has interpreted Michigan's long-arm statute as providing for the broadest grant of jurisdiction consistent with due process. *Sports Auth. Mich., Inc. v. Justballs, Inc.*, 97 F.

Supp. 2d 806, 810 (E.D. Mich. 2000) (citing *Sifers v. Horen*, 385 Mich. 195, 198-99 (1971)). As a result, the analysis collapses into whether exercising personal jurisdiction over Defendants would violate Due Process. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 89 F.3d 1257, 1262 (6th Cir. 1992).

It is well-established that in order for a court to exert limited personal jurisdiction, the defendant must have "sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The Sixth Circuit has repeatedly analyzed three criteria to decide whether a court's exercise of personal jurisdiction over an out-of-state defendant is constitutional:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (citing *S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968)).

### 1. Purposeful Availment

The first *Mohasco* requirement is that an out-of-state defendant purposefully avail himself of the privilege of acting or producing consequences in the forum state. *CompuServe*, 89 F.3d at 1263. This prong is satisfied if the defendant commits acts that "create a 'substantial connection' with the forum state," so that he "should reasonably anticipate being haled into court there." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)); *see also World-Wide*

*Volkswagon Corp. v. Woodson*, 444 U.S. 286, 295 (1980). The purpose of this requirement is to avoid subjecting defendants to suits in foreign forums based on contacts that are "random," "fortuitous," or "attenuated." *Burger King*, 471 U.S. at 475. The defendant, however, does not need to be physically present in the forum state to meet this test. *Great Domains*, 141 F. Supp. 2d at 772.

With respect to exercising personal jurisdiction over individual corporate officers, the Sixth Circuit has stated that "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir. 2000) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)). Having said that, the *Balance Dynamics* court also rejected the "fiduciary shield doctrine," and held that the mere fact that the actions connecting the individual corporate officers to the forum state were undertaken in an official rather than a personal capacity does not preclude courts from exercising personal jurisdiction over them. *Id.* Accordingly, Sixth Circuit instructed, "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on the traditional notions of fair play and substantial justice; i.e., whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment." *Id.*

Here, Plaintiff has alleged virtually no facts from which the Court could even infer that either Defendant had any individual or personal contacts with the State of Michigan that would render jurisdiction over them appropriate. Plaintiff stated that Perry, Centerpointe's president, signed the contract between Flagstar and Centerpointe and also that the contract identified Margolis as Centerpointe's vice-president. (Pl.'s Resp. 1.) Aside from that, Plaintiff only mentions Defendants' individual involvement when describing the mortgage fraud conspiracy by stating, "[t]he mortgage

fraud was directed, Flagstar believes, by Defendants Perry and Margolis, and carried out by them and their agents, including their own companies and Leopold Korn. In essence, Perry and Margolis used Centerpointe and Centerline as their alter egos to facilitate mortgage fraud." (*Id.* at 2.) Plaintiff's response also alleges that "Perry and Margolis may have used the names of "Judith Brown-Wallace," "Ryan Price," and "James Reese" as loan officers, since no information at all has been found about these individuals and whether they even really exist." (*Id.* at 4.)

First, none of these claims are supported by citations to admissible evidence. Second, these accusations do not demonstrate either Defendant had any personal contacts with the State of Michigan. This can best be seen by analyzing the section of Plaintiff's response titled "Michigan Connections." The entirety of that paragraph reads:

> As is typical in the loan origination process, for each mortgage loan underlying this lawsuit, Centerpointe provided to Flagstar in Michigan the various required documents, including: the borrower's loan application, the borrower's credit report, bank account deposit statements, down payment verifications, various underwriting and approval documents, the appraisal, etc. Before funds were wired from Michigan, there was communication to Flagstar in Michigan by e-mails, faxes and phone from both the mortgage broker, Centerpointe, and the escrow and closing agent, Leopold Korn, regarding the meeting of required underwriting conditions and the completeness of the loan origination files so that each loan origination package would meet secondary market investment requirements. Leopold Korn also performed the title searches and issued the title insurance.

(Pl.'s Resp. 4 (citations omitted).) Plaintiff's claims only implicate Centerpointe as a corporation, and are entirely silent as to any personal involvement on Defendants' part. Plaintiff does not allege that either Defendant prepared any of the documents sent to Michigan, made any of the phone calls, or had any contact with the state whatsoever. In support for its argument that the individual

Defendants are subject to limited jurisdiction in this Court, Plaintiff merely states that "there is no doubt at all that Perry's and Margolis's closely-held corporation, Defendant Centerpointe, is subject to jurisdiction in Michigan." (Pl.'s Resp. 9.) After noting the contract language requiring Centerpointe to submit to jurisdiction in Michigan, Plaintiff details Centerpointe's contacts with Michigan but fails to identify *anything* that suggests either Defendant had any contact with the state.

By contrast, both Perry and Margolis submitted affidavits stating "I had no personal involvement in any of the transactions alleged by Flagstar . . . nor have I had any communications with Flagstar relating to the transactions. I have never made any representations of any kind to Flagstar in connection with the transactions." (Defs.' Reply Ex. A, Declaration of Stephen Margolis ¶ 7, Dec. 16, 2010; Ex. B, Declaration of Craig Perry ¶ 7, Dec. 17, 2010.) Both Defendants also denied Plaintiff's allegations that they used pseudo names for loan officers. (*Id.*) Plaintiff has not presented any evidence to the contrary. As a matter of law, Plaintiff has failed to present any evidence that Defendants have purposefully availed themselves of acting or causing consequences in Michigan. Accordingly, it is unnecessary to evaluate the remaining two factors under *Mohasco*. The Court holds that Plaintiff has failed to allege sufficient facts to make out a *prima facie* case that Defendants are subject to personal jurisdiction based on their contacts with the State of Michigan.

### B. Piercing the Corporate Veil

In the alternative, Plaintiff argues the Court should "pierce the corporate veil" between Defendants and Centerpointe, and attribute Centerpointe's submission to jurisdiction in Michigan to Defendants. (Pl.'s Resp. 11-13.) It is appropriate for courts to exercise personal jurisdiction over a corporation or individual that would not otherwise be subject to jurisdiction in that court when the individual or corporation is an alter ego of another company that is subject to jurisdiction in the

8

forum state. *Estate of Thomson*, 545 F.3d at 362 (quoting *Patin*, 294 F.3d at 653). This alter-ego approach to personal jurisdiction is typically employed in the parent-subsidy context. *Id.*

Under Michigan law, "there is a presumption that the corporate form will be respected." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing *Seasword v. Hilti*, 449 Mich. 542, 547 (1995)). Courts will only pierce the corporate veil when (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was exploited to commit fraud or another wrong; and (3) the plaintiff suffered an unjust loss. *Id.*; *see also Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 457 (1982). When analyzing these factors, courts frequently consider more specific factors such as undercapitalization of the corporation, whether entities maintain separate books, whether individuals maintain separate corporate and personal finances, the use of the corporation to support fraud or illegality, whether the corporation is a sham, and whether corporate formalities are honored. *Int'l Millenium Consultants, Inc. v. Taycom Bus. Solutions, Inc.*, 692 F. Supp. 2d 733, 744 (E.D Mich. 2010) (quoting *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302-03 (6th Cir. 2005)). Deciding whether to pierce the veil is a fact-intensive inquiry and is highly dependent on the equities of the situation. *Id.*

Plaintiff, however, does not describe the alleged alter ego relationship between Defendants and Centerpointe at all. Rather, Plaintiff's response simply contains the conclusory allegation that the borrowers of the mortgage loans originated by Centerpointe lied and that Defendants facilitated this fraud. (Pl.'s Resp. 12.) This bald assertion, however, is not supported by any evidence. Furthermore, even if it were true, it would be insufficient to support the conclusion that Centerpoint is Defendants' alter-ego. In a similar case, Chief Judge Heyburn of the United States District Court

for the Western District of Kentucky found that "[a]llegations that [the individual officer defendant] formed a legitimate Florida corporation for a fraudulent purpose constitute neither conduct sufficient to support any alter ego finding nor conduct in Kentucky sufficient to support personal jurisdiction over [him] individually." *Med. Distribution, Inc. v. Quest Healthcare, Inc.*, No. 3:00-cv-154-H, 2002 WL 32398447, at *5 (W.D. Ky. Feb. 1, 2002). The court held that "[w]ithout allegations of alter ego, [the defendant's] mere knowledge of *or direction* of Quest's actions in Kentucky is not enough to support personal jurisdiction over him in this forum." *Id.* (emphasis added).

The same is true here. Plaintiff does not claim that Defendants co-mingled their personal finances with corporate assets, that Centerpointe is a sham, or that Defendants have abused the corporate form or corporate formalities. Accordingly, Plaintiff has failed to allege facts that would support piercing the corporate veil on the theory that Centerpointe is merely an instrumentality for either Perry or Margolis.

There is also no evidence to support piercing the corporate veil due to fraud or wrongdoing. Plaintiff simply alleges that "[i]n order to induce Plaintiff to purchase the Subject Loans, a series of misrepresentations were made to Plaintiff . . . ." (Compl. ¶ 79.) Plaintiff claims that the borrowers' employment, assets, liabilities, and intent to occupy the property were all misrepresented to Plaintiff, and that Flagstar relied on those representations before deciding to purchase the Subject Loans. (Compl. ¶¶ 80-81.) Furthermore, Plaintiff also claims that "Defendants made the representations alleged herein with the knowledge that the representations were false at the time they were made and with the intent of deceiving and inducing Plaintiff to enter into the Subject Loan Transactions." (Compl. ¶ 85.)

Even assuming that these allegations satisfy the heightened pleading requirements of Rule

9(a), Plaintiff's claims do not support piercing the corporate veil based on fraud or wrongdoing. Although Plaintiff has alleged fraud, in order to pierce the corporate veil, Plaintiff must demonstrate that the fraud or wrongdoing resulted from an abuse of the corporate form. *See Stramaglia v. United States*, No. 06-13764, 2007 WL 4404185, at *3 (E.D. Mich. Dec. 13, 2007). In *Stramaglia*, the court explained that with respect to piercing the corporate veil on account of fraud or wrongdoing:

> It should be emphasized that the showing of inequity necessary to satisfy the second prong must flow form the misuse of the corporate form. The mere fact that a corporation commits an unfair labor practice, or breaches a contract, or commits a tort, does not mean that the individual shareholders of the corporation should personally be liable.... It is only when the shareholders disregard the separateness of the corporate identity *and when that act of disregard causes the injustice or inequity or constitutes the fraud* that the corporate veil may be pierced.

*Id.* (quoting *NLRB v. Great Kansas Roofing*, 2 F.3d 1047, 1053 (10th Cir. 1993)) (emphasis in original). Here, as mentioned above, Plaintiff has made no allegations that Defendants have abused the corporate form or that they individually made fraudulent representations directed at the State of Michigan.

Finally, Plaintiff also claims that the Court should pierce the corporate veil because Perry, Centerpointe's president, signed the contract with Flagstar. (Pl.'s Resp. 12.) Although Plaintiff claims that courts have found company presidents subject to personal jurisdiction in similar situations, the two decisions Plaintiff cites are distinguishable from the instant case. *See, Dimensional Tech. Int'l, Inc. v. Kellner Software*, No. 07-cv-14232, 2010 WL 726740 (E.D. Mich. Feb. 24, 2010); *Dana Commercial Credit Corp. v. FTS Trucking, Inc.*, No. 07-71181, 1987 U.S. Dist. LEXIS 15514 (E.D. Mich. Sept. 1, 1987).

In *Dimensional Technology*, the plaintiff, a Michigan corporation, orally contracted with a

German software company, Kellner Software, through its president, Bernd Kellner, for the exclusive rights to certain software and source codes for electronic equipment. 2010 WL 726740, at *1. When Kellner Software breached the terms of the contract, the plaintiff sued both Kellner and his software company in Michigan. Citing *Balance Dynamics*, the court held it had personal jurisdiction over Kellner personally. *Id.*, at *3. The court found that "Kellner himself was actively and personally involved in creating the contract which gave rise to the lawsuit." *Id.* This case is distinguishable from the facts of the case at bar, however, because in *Dimensional Technology* the individual corporate officer negotiated the entire oral contract, whereas here Perry simply signed the agreement on behalf of Centerpointe. Furthermore, the *Dimensional Technology* court held that piercing the corporate veil was appropriate because Kellner personally made several intentional misrepresentations to the plaintiff. (*Id.*, at *4.) By contrast, Perry submitted an affidavit stating that he has not had any personal involvement in any of the transactions, had no communication with Flagstar, and made no representations to Plaintiff. (Perry Decl. ¶ 7.)

The *Dana* decision is also distinguishable from the instant case. In *Dana*, the court found personal jurisdiction over the defendant corporation's president because he personally signed the lease-purchase agreement at issue as a guarantor. 1987 U.S. Dist. LEXIS 15514, at *1. This "personal guarantee," the court held, put him "in a continuing relationship with [the plaintiff]," *id.*, at *11, and renders *Dana* inapposite because there is not question that Perry did not agree to be a guarantor or have any personal stake in the contract between Flagstar and Centerpointe. Accordingly, the Court holds that it would be inappropriate to pierce the corporate veil.

### IV. Conclusion

For the reasons stated above, Defendants' motions to dismiss for lack of personal jurisdiction

are GRANTED.

**SO ORDERED.**

Dated: 5-26-11

/s/ Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE